Filed 7/28/14  In re S.H. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re S.H., a Person Coming Under the Juvenile Court Law. | B252761 (Los Angeles County Super. Ct. No. CK67049) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff, Respondent, and Cross-Appellant,<br><br>        v.<br><br>M.D. et al.,<br><br>        Defendants, Appellants, and Cross-Respondents. | |

        APPEALS from orders of the Superior Court of the County of Los Angeles, Marilyn K. Martinez, Commissioner.  Affirmed.

        Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant, Appellant, and Cross-respondent M.D.

        Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant, Appellant, and Cross-respondent J.K.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Aileen Wong, Deputy County Counsel for Plaintiff, Respondent and Cross-appellant.

## INTRODUCTION

Defendant and appellant J.K. (mother) and the father of her two youngest children, defendant and appellant M.D., appeal from the juvenile court's jurisdiction and disposition orders. According to mother and M.D., there was insufficient evidence to support the juvenile court's findings that both mother and M.D. posed a current risk of harm to mother's six children[1] and that there was no reasonable alternative other than removal that would protect the children. The Department of Children and Family Services (DCFS) cross-appeals from the juvenile court's order dismissing all of the counts of the third amended Welfare and Institutions Code section 300 petition[2] except the four new counts that the juvenile court added to the petition on its own motion. DCFS contends that the dismissal of the allegations based on M.D.'s physical abuse of mother's four older children and mother's failure to protect them was not supported by substantial evidence.

Because there was sufficient evidence to support the juvenile court's findings that mother and M.D. posed a risk of harm to the children and there were no reasonable alternatives short of removal to protect them, we affirm the jurisdiction and disposition orders. Because we have affirmed the jurisdiction order, we do not have to reach the issues raised by DCFS's cross-appeal concerning the other alleged grounds supporting the juvenile court's jurisdiction

---

[1] Mother's four oldest children, S.H., C.H., Ch.H. and Ca.H., had a different father than her two youngest children, A.D. and Ma.D., who were fathered by M.D.

[2] All further references are to the Welfare and Institutions Code unless otherwise indicated.

# FACTUAL AND PROCEDURAL BACKGROUND[3]

In a prior dependency proceeding commenced in June 2011—involving mother and her four older children and serious allegations of physical abuse of those children by mother and M.D.—the juvenile court sustained, inter alia, the following allegations in the section 300 petition:

"a-1. On 06/10/11, the child [Ca.H.] was medically examined and found to be suffering a detrimental and endangering condition consisting of healing fractures of the child's left mid humerus and proximal right tibia and *a burn to the child's left hand*. The child's injuries are in different stages of healing. The child's mother, [J.K.], gave various explanations of the history of the child's injuries. The child's injuries are consistent with non accidental trauma. Such injuries would not ordinarily occur except as the result of deliberate, unreasonable and neglectful acts by the child's mother who had care, custody and control of the child. Such deliberate, unreasonable and neglectful acts on the part of the child's mother endangers the child's physical health, safety and well-being, create a detrimental home environment and places the child and the child's siblings, [S.H.], [Ca.H.] and [Ch.H.] at risk of physical harm and danger." (Italics added.)

"b-1. "On a prior occasion, the children [S.H.], [C.H.], [Ch.H.] and [Ca.H.'s] mother, [J.K.]'s male companion, [M.D.] physically abused the child [Ca.H.] by kicking the child's car seat while the eight month old child was in the car seat. On 6/10/11, the child was medically examined and found to have sustained fractures to the child's left humerus and proximal right tibia. The mother knew or reasonably should have known of the physical abuse of the child by the male companion and failed to protect the child. The physical abuse of the child by the male companion and the mother's failure to protect the child endangers the child's physical health, safety and well-being creates a

---

[3] Because mother and M.D. challenge only the sufficiency of the evidence supporting the juvenile court's jurisdiction and disposition orders, we set forth only the facts relevant to those issues. Because, as explained below, we do not reach the merits of DCFS's challenges to the dismissal order, we omit facts relating to those challenges.

detrimental home environment and places the child and the child's siblings [S.H.], [C.H.] and [Ch.H.] at risk of harm, damage, danger, physical abuse and failure to protect."

"b-7. On prior occasions, the children [S.H.], [C.H.], [Ch.H.] and [Ca.H.]'s mother, [J.K.]'s male companion, [M.D.], physically abused the children, [S.H.], [C.H.] and [Ch.H.] by striking the children with belts, inflicting marks and bruises to the children's buttock. Such physical abuse was excessive and caused the children unreasonable pain and suffering. The mother failed to protect the children when the mother knew of the physical abuse of the children by the male companion. Such physical abuse of the children by the male companion and the mother's failure to protect the children endangers the children's physical health, safety and well-being, creates a detrimental home environment and places the children and the children's sibling [Ca.H.] at risk of harm, damage, danger, physical abuse and failure to protect."

Based on the sustained petition, DCFS provided the family with reunification services. The juvenile court had terminated the prior dependency proceeding in December 2012.

On June 1, 2013, an anonymous referral was called into DCFS's Child Protection Hotline reporting the following facts: an unidentified male was overheard constantly yelling and cursing at mother's six children; the unidentified male was overheard "whipping one of the children aggressively"; and "the hitting and crying [were] so loud several neighbors stepped out of their apartments." When a children's social worker (CSW) interviewed M.D., he denied that he used physical punishment on the children, denied that he had ever abused the children, and specifically denied that he physically abused the children as alleged in the prior dependency proceeding.

In July 2013, DCFS filed a section 300 petition alleging that M.D. physically abused two-year-old Ca.H. by striking her and that mother failed to protect her children from such abuse. At the detention hearing, the juvenile court detained the children, vested DCFS with temporary custody of them, and granted DCFS the discretion to place the children with their maternal grandmother and to place the four older children with their father. Mother was granted monitored visitation.

4

In an August 2013, last minute information report, DCFS informed the juvenile court that it had received and attached a report from the Long Beach Police Department detailing a March 2011 incident during which M.D. physically abused an older son by a different mother. In the report, the police described the incident, which included M.D. striking and then dragging his son through a park while calling him a "bitch" and a "fat ass." That son's mother explained that the incident was not the first time M.D. had hit her son.

In an August 2013 jurisdiction/disposition report, a CSW reported that mother's daughter, A.D., a toddler, had burn marks on her left foot and buttock. In a second amended petition, DCFS alleged, inter alia, that the burn marks on A.D. "would not ordinarily occur except as the result of deliberate, unreasonable, and neglectful acts by the child's mother . . . and father, [M.D.] . . . ." In a third amended petition filed in September 2013, DCFS alleged that mother and M.D. had "attribute[d] the burn[s] to the child pulling a cloth[es] iron [on to] herself."

At the October 15, 2013, continued adjudication hearing, the juvenile court heard the arguments of counsel and, at the close of argument, amended the operative third amended petition on its own motion to include the following four allegations: "b-4, j-1. Both [A.D.] and [Ca.H.] have sustained iron burns while in the care and custody of their mother. Such neglectful acts by mother, [J.K.], places the children and their siblings at risk." "b-8, j-4. Even though the Dependency Court previously sustained that [M.D.] physically abused [S.H.], [C.H.], [and Ca.H.], [M.D.] recently denied that he ever physically abused those children. Such denial places his children at risk."

The juvenile court then sustained the newly added allegations, but dismissed all of the other allegations in the third amended petition. According to the juvenile court, "[T]here will be two counts. So one of them I will designate as a B-4 as well as a J-1. [¶] Both [A.D.] and [Ca.H.] have sustained iron burns while in the care and custody of their mother. Such neglectful acts by mother, [J.K.] places the children and their siblings at risk. [¶] The second count that I am sustaining, I am numerating B-8 and J-4. And it reads: [¶] Even though the dependency court sustained that father [M.D.], physically

5

abused—or previously physically abused [S.H.], [C.H.], and [Ca.H.], [M.D.] recently denied that he has—that he ever abused these children. [¶] I want to say denied that 'he ever physically abused these children.' Such denial places his children at risk."

Following arguments on disposition, the juvenile court ruled as follows: "Based on the sustained petition and all of the evidence from trial and judicial notice, I do declare the children dependents of the court pursuant to the same two subdivisions under which they were just described. [¶] I now find by clear and convincing evidence [that a] substantial danger exists to the children, and there is no reasonable means to protect them without removing them from their mother and the two younger children from their father. [¶] Reasonable efforts have been made to preclude this but without sufficient progress to date. [¶] And, therefore, I order the custody be so removed. [¶] [T]he four older children shall be in their father's custody with family maintenance. [¶] And those four children with their mother, enhancement-like services. [¶] [M.D.'s] two . . . children shall have reunification services with their parents. [M.D.] shall have monitored visits in the social worker's office or by any [DCFS] approved monitor."

Mother and M.D. appealed from the jurisdiction and disposition orders. DCFS cross-appealed from the juvenile court's order dismissing the other allegations of the third amended petition.

## DISCUSSION

### A. The Appeals

#### 1. Standard of Review

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we

6

note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193 [60 Cal.Rptr.2d 315].) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] '"[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]."' [Citation.]" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321 [247 Cal.Rptr. 100].)' (See *In re Angelia P.* (1981) 28 Cal.3d 908, 924 [171 Cal.Rptr. 637, 623 P.2d 198].)" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

### 2.    *Analysis*
#### a.    Jurisdiction

Mother contends that there was insufficient evidence that she posed a risk of harm to her children. According to mother, the law requires a showing of "current" risk of harm and the evidence did not satisfy that requirement. M.D. contends that the evidence against him was too "stale" to support a reasonable inference that he posed any risk of harm to his children.[4]

When the evidence is viewed under the governing substantial evidence standard, it supports a reasonable inference that both mother and M.D. posed a significant risk of harm to the children. As recently explained in *In re J.K.* (2009) 174 Cal.App.4th 1426, section 300, subdivision (a) provides that jurisdiction may be based on a prior incident of harm or a current or future risk. "The language of section 300, subdivisions (a), (b) and (d) is clear. All three subdivisions are satisfied by a showing that the minor *has suffered*

---

[4]    M.D. also suggests that because he was not a party to the prior dependency case, which involved mother's four oldest children from another father, the juvenile court should not have considered the findings of physical abuse by M.D. made in that case. But, as DCFS points out, father was interviewed by a CSW in that case and denied any physical abuse. Based on the evidence in that case, the juvenile court rejected father's denials and found that he had abused mother's older children, a finding that the juvenile court in this case properly considered.

*prior* serious physical harm or abuse. (§ 300, subds. (a) ['*The child has suffered, or* there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian.' (italics added)], (b) ['*The child has suffered, or* there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . .' (italics added)], (d) ['*The child has been sexually abused, or* there is a substantial risk that the child will be sexually abused . . . .' (italics added)].) In addition, the use of the disjunctive 'or' demonstrates that a showing of prior abuse and harm is sufficient, standing alone, to establish (fn. omitted) dependency jurisdiction under these subdivisions." (*In re J.K. supra,* 174 Cal.App.4th at pp. 1434-1435.) "We note, however, that at least with respect to section 300, subdivision (b), prior abuse and harm may be sufficient to support the *initial* exercise of jurisdiction, but '[t]he child shall *continue* to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness.' (Italics added.) We interpret this language to be consistent and in harmony with the first phrase of subdivision (b) and thus the use of the term 'continue' presupposes an initial exercise of jurisdiction either based on a prior incident of harm or a current or future risk." (*Id*. at p. 1435, fn. 5.)

Here, the evidence showed that one of mother's older children, Ca.H., suffered serious physical injuries while under mother's care and supervision, including a burn. The evidence further showed that notwithstanding the prior dependency proceeding—which was commenced, in part, due to the injuries to Ca.H.—another of mother's children, A.D., suffered burns to her ankle and buttock *after* the prior dependency proceeding had been terminated. Having once had a child burned with an iron, a subsequent similar incident at best demonstrates neglect. Those two incidents of past injuries were therefore sufficient, standing alone, to support a finding of jurisdiction under section 300, subdivision (b). Moreover, the similarity and timing of the injuries supported a reasonable inference that mother posed a future risk of harm to her children

8

because, despite her involvement in the prior proceeding, she continued to neglect the safety of her children.

The evidence against M.D. similarly supported the juvenile court's conclusion that he posed a risk of injury to his children. In the prior dependency proceeding, the juvenile court sustained allegations that M.D. had physically abused mother's older children in the past and the record also contained a police report stating that M.D. had physically and verbally abused an older son in the past. Notwithstanding those findings and that evidence, M.D. told the CSW who interviewed him in this case that he never abused mother's children and specifically denied the allegations of physical abuse that had been found true in the prior proceeding. Those denials in the face of overwhelming evidence to the contrary supported a reasonable inference that M.D. had not yet acknowledged, much less accepted responsibility for, his past conduct. The juvenile court was therefore entitled to conclude that M.D. posed a current risk of harm to his children.

b.    Disposition

Mother and M.D. contend that even if the evidence supported a finding of jurisdiction over the children, it was insufficient to establish that there were no other reasonable means to protect the children other than removal. According to mother and M.D., the evidence against them did not show a current risk of harm or detriment and, in any event, there were reasonable alternatives to removal such as in-home services, unannounced visits, and a requirement that mother not iron in the home while children were present.

The juvenile court's power to remove custody of the children from their parents under these circumstances is governed by section 361, subdivision (c)(1), which provides: "A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5), inclusive, and, in an Indian child custody proceeding, paragraph (6): [¶] (1) There is or would be a substantial danger to

9

the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. *The fact that a minor has been adjudicated a dependent child of the court pursuant to subdivision (e) of Section 300 shall constitute prima facie evidence that the minor cannot be safely left in the physical custody of the parent or guardian with whom the minor resided at the time of injury.* The court shall consider, as a reasonable means to protect the minor, the option of removing an offending parent or guardian from the home. The court shall also consider, as a reasonable means to protect the minor, allowing a nonoffending parent or guardian to retain physical custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm." (Italics added.)

For the reasons discussed above, the evidence supported a finding that both mother and M.D. posed a risk of harm or detriment to their children. It therefore constituted prima facie evidence that the children could not be left safely in the physical custody of mother and M.D. Moreover, that evidence also supported the juvenile court's conclusion that removal was required under the circumstances. Given the serious injuries to A.D., after mother had participated in the prior dependency proceeding, it was not unreasonable for the juvenile court to conclude that removal was necessary to ensure that no such future injuries were suffered by the children and to ensure that mother received the services necessary to remedy her propensity to neglect the physical well being of her children. Similarly, given M.D.'s continued denial of his propensity to physically abuse children under his care and supervision, it was not unreasonable for the juvenile court to conclude that removal from M.D. was necessary to ensure that he did not abuse his children as he had abused other children in the past and to ensure that he received the necessary services to remedy his propensity to physically abuse children in his custody.

10

## B. The Cross-Appeal

DCFS challenges in its cross-appeal the juvenile court's order dismissing the allegations pertaining to M.D.'s physical abuse of the children and mother's failure to protect them from such abuse. Because we have affirmed the juvenile court's jurisdiction order, there is no need to reach the merits of those challenges. "'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J., supra*, 56 Cal.4th at p. 773.; see *In re Drake M.* (2012) 211 Cal.App.4th 754, 762.) The court in *In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492 discussed this principle as follows: "It is commonly said that the juvenile court takes jurisdiction over children, not parents. [Citations.] While this is not strictly correct, since the court exercises *personal* jurisdiction over the parents once proper notice has been given [citation], it captures the essence of dependency law. The law's primary concern is the protection of children. [Citation.] The court asserts jurisdiction with respect to a child when one of the statutory prerequisites listed in section 300 has been demonstrated. [Citation.] The acquisition of personal jurisdiction over the parents through proper notice follows as a consequence of the court's assertion of dependency jurisdiction over their child. [Footnote omitted.] [Citations.] Parental personal jurisdiction allows the court to enter binding orders adjudicating the parent's relationship to the child [citation], but it is not a prerequisite for the court to proceed, so long as jurisdiction over the child has been established. [Citation.] Further, every parent has the option not to participate in the proceeding, even if properly noticed. [Citation.] [¶] As a result of this focus on the child, it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.] Once the child is found to be endangered in the manner described by one of the subdivisions of section

11

300—e.g., a risk of serious physical harm (subds. (a) & (b)), serious emotional damage (subd. (c)), sexual or other abuse (subds. (d) & (e)), or abandonment (subd. (g)), among others—the child comes within the court's jurisdiction, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred. [Citation.] For jurisdictional purposes, it is irrelevant which parent created those circumstances. A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. [Citation.] As a result, it is commonly said that a jurisdictional finding involving one parent is '"good against both. More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent."' [Citation.] For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence. [Citations.]"

Under the authorities cited above, the juvenile court's jurisdictional findings against both mother and M.D. that we have affirmed were sufficient to support the juvenile court's exercise of jurisdiction over the children. DCFS has not provided any reasons for addressing the merits concerning the dismissed counts. Both parents are offending parents. DCFS does not suggest that the dismissed findings could have an effect on current or future dependency proceedings. There would be no effect on the disposition, and there is no indication the findings could have consequences beyond dependency jurisdiction. Therefore, we elect not to address the propriety of the dismissal of the other counts because once the juvenile court obtained jurisdiction over the minors for any of the reasons alleged in the petition, it had corollary jurisdiction over mother and M.D., after proper notice, to make orders affecting the welfare of the children. (See *Los Angeles County Department of Children and Family Services v. Superior Court* (2012) 211 Cal.App.4th 13, 22 [having issued a writ to compel jurisdiction, court did not address remaining bases for jurisdiction alleged in the petition by the DCFS].)

12

## DISPOSITION

The jurisdiction and disposition orders are affirmed and the cross-appeal from the order dismissing certain allegations from the third amended section 300 petition is dismissed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

TURNER, P. J.

MINK, J.*

---

* Retired Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.